UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.   1:14CR162 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE JOHN R. ADAMS |
| vs. | ) | |
| | ) | |
| TRAVIS NEGRELLI, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

Pending before the Court is the question of whether the Court will require further disclosures regarding the payment of attorney fees made on behalf of Defendant Travis Negrelli by third parties.  The parties have both briefed the issue at the Court's direction, and the Court now resolves the outstanding issue.

Negrelli was indicted on May 6, 2014 for being a felon in possession of ammunition. Negrelli was arraigned by this Court on June 4, 2014, and the bond he had received from the Southern District of Florida, where he was arrested, was revoked.  A detention hearing was held on June 9, 2014, and the Court ordered that Negrelli be detained pending resolution of this matter. At the time of those initial proceedings, Negrelli was represented by Attorneys Michael Peterson and Paul Daher.  These counsel then filed a discovery request and numerous motions, including a request to identify any informants, a request for the Court to order a pre-plea presentence report, a request for *Brady* and *Jencks* materials, and a request for the disclosure of any expert witnesses.

On July 7, 2014, Attorney Edward O'Donnell filed for pro hac vice admission to additionally represent Negrelli.  On that same day, Negrelli's attorneys filed two motions to

1

suppress. The timing of these motions required the Court to continue the pretrial set in this matter for July 9, 2014. The Court attempted to conduct such a hearing on August 5, 2014. Given disclosures that were made during that conference, the suppression hearing was set for September 25, 2014. The day before that hearing, Attorney Richard Klugh requested pro hac vice admission to also represent Negrelli. The Court conducted a short conference on that day and reset the matter once again for November 20, 2014.

On October 9, 2014, the Government filed a motion to compel, contending that certain documents had not been provided in a timely manner. The Court scheduled a hearing on that matter for October 15, 2014. That matter was reset for October 21, 2014. Meanwhile, on October 16, 2014, Negrelli filed a supplemental motion to suppress. On November 18, 2014, Negrelli filed yet another motion to suppress, a mere two days before the scheduled hearing. The Court then went forward on November 20, 2014, prepared to resolve the pending motions filed by Negrelli.

However, at the inception of that hearing, counsel asked for additional time to finalize a plea agreement they wished to present to the Court. The Court then proceeded to engage in a plea colloquy with Negrelli to explain the nature of the agreement and the rights he was waiving by entering a guilty plea. Moreover, the Court also had to explain that Negrelli's counsel had negotiated a Fed. R. Crim. P. 11(c)(1)(C) agreement. The Court explained that if it ultimately accepted such an agreement, the parties' recommended 36-month sentence would become binding upon the Court. The Court, however, also advised Negrelli that it was not accepting the plea agreement on the day of the hearing. Instead, the Court was provisionally accepting the agreement subject to its review of the presentence report. At that time, Negrelli acknowledged

that he understood that the Court could ultimately reject the agreement after that review and that he would be returned to his litigation stance as of the time of the plea hearing.

At the conclusion of that colloquy, the Court inquired of counsel whether any other issues needed to be addressed. At that time, Attorney Klugh **on behalf of Mr. Negrelli,** commented as follows:

> Your Honor, there's only one other matter that we discussed with the government outside. The government had brought a concern up today that with regard to making sure that counsel -- the defendant was aware that the government would -- had looked into whether how his counsel were paid. And that the government has indicated that this certainly, this plea agreement, for the defendant's concern, so that he can't assert any claim that his counsel have made some decision for their own interest as opposed to his interest, that he should know that this agreement certainly resolves any inquiry by the government into that matter; is that correct?

Doc. 66 at 33-34. Counsel for the Government then indicated that the plea agreement would indeed resolve any issue regarding the Government bringing a conflict issue before the Court. The Court then inquired of the Government to explain the conflict issue more broadly. Counsel for the Government explained the issue as follows:

> Your Honor, we had received yesterday FinCEN documents,[1] cash transaction reports that Attorney O'Donnell had declared substantially large cash proceeds in the amounts of $20,000 approximately from defendant's girlfriend in this matter who doesn't appear to have the income to be able to make a $20,000 of cash payment. Also approximately $30,000 cash payment was made by someone that law enforcement is familiar with and he's a known and admitted marijuana trafficker, a large scale marijuana trafficker.
>
> So the concern was whether counsel was representing this defendant's interest, or if he was representing someone else's interest.
>
> And the government, as required, is requiring to bring that as quickly as possible for the court. Our thought was if the defendant was not interested in the proposed plea, which is fairly favorable to them, that it would indicate that Mr. O'Donnell could possibly not be working on the defendant's behalf, but be presenting or part of his representation could in some way be affected by his obligations that he feels towards these other persons that are involved in the case. That was our intention. Apparently, counsel talked with Mr. Negrelli. Mr. Negrelli decided that

---

[1] Those financial documents are attached to this Court order as Exhibit 1.

3

>he wanted to make the plea agreement, which I think is in furtherance of something that's in his best interest, and we didn't feel that he was being stonewalled in the case by any of the counsel. So we didn't feel that it would be necessary to bring that conflict up in court since the defendant's counsel apparently acted in his best interest.

Doc. 66 at 34-35.

Following this explanation, the Court inquired of all counsel as to whether they believed the Court now had an obligation to further explore the issue to ensure that Negrelli was receiving conflict-free counsel. Attorney Klugh was adamant that no further inquiry was necessary, especially in light of the Government's admission that they believed that counsel was operating in Negrelli's best interest.

The Court briefly recessed following argument from counsel. Following the recess, the Court asked the Government to reiterate the information it had learned from the financial disclosure documents. Counsel indicated that Attorney O'Donnell had received $28,040 from an individual named Jacob Lesiak, and $20,000 from his Negrelli's girlfriend, Jeanie Videtic. Upon further argument for counsel, the Court determined that the matter warranted a full hearing and scheduled it for the following day.

At the outset of the hearing the next morning, Attorney Peterson requested permission for Attorney Daher to address the Court. At that time, Attorney Daher informed the Court that he had previously represented Mr. Lesiak in a drug-related matter in the Cuyahoga County Court of Common Pleas.[2] Attorney Daher failed to provide the Court with any meaningful reason for why he did not present this information the prior day when Mr. Lesiak was identified as the source of funds paid to Attorney O'Donnell. The record also reflects that Attorney Daher only

---

[2] A copy of the docket that reflects the dates that Daher represented Lesiak is attached hereto as Exhibit 2, making it clear that only a handful of months passed between completion of Daher's representation of Lesiak and the start of his representation of Negrelli.

presented the information to the Court after the Government indicated that it would present the information if he did not do so on his own.

The Court then heard testimony from numerous Government witnesses that verified the information the Court had learned on the prior day. Namely, the Court learned that third parties had paid substantial sums on behalf of Negrelli and that it did not appear that the third parties had sufficient legal funds to pay the amounts in question. The Court then inquired directly of Negrelli. Negrelli indicated that he was aware that these payments were made on his behalf and that he was aware that Attorney Daher had previously represented his cousin, Mr. Lesiak.

After hearing additional argument from Attorney Peterson, the Court determined that it would allow briefing before finalizing a decision on whether additional disclosures should be compelled. Negrelli's counsel filed their briefing on the issue on December 1, 2014, and the Government filed its brief on December 5, 2014. The Court now resolves the outstanding issue.

"It is apodictic that the Sixth Amendment's guarantee of effective assistance of counsel encompasses the attorney's obligation to avoid conflicts of interest arising from joint representation during the plea stage of the proceedings." *Moss v. United States*, 323 F.3d 445, 456 (6th Cir. 2003). "Courts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise. *Wood v. Georgia*, 450 U.S. 261, at 268-270 (1981) (footnotes omitted). However, a third-party fee arrangement does not automatically create a conflict of interest. *See United States v. Alvarez*, 137 F.3d 1249, 1252 (10th Cir.1998). "An actual conflict of interest exists only if counsel was forced to make choices advancing interests to the detriment of his client." *Workman v. Mullin*, 342 F.3d 1100, 1107 (10th Cir.2003) (quotation omitted). In other words, there must be more than a potential conflict

5

of interest or "a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).

Of course, in the instant matter, the Court has not been called upon to determine the extent of an actual conflict. Instead, the issue squarely before the Court is whether an *inquiry* into the extent of a possible conflict is warranted. Defense counsel has argued at length that no further inquiry is required. In so doing, counsel has argued at length that neither the Government nor Mr. Negrelli is seeking to actively pursue such an inquiry. In so arguing, counsel ignores that the Court has an independent duty to ensure that Mr. Negrelli has conflict-free counsel. In fact, the *Wood* Court described the Court's obligation as follows: "Nevertheless, the record does demonstrate that the possibility of a conflict of interest was sufficiently apparent [in the record] to impose upon the court a **duty** to inquire further." *Wood*, 450 U.S. at 272 (emphasis added).

In the instant matter, the Court has learned that one of Negrelli's four attorneys has received over $50,000 from third parties. The record further strongly suggests that neither of these third-parties has sufficient income or assets to have access to legally obtained funds in the amounts paid to Attorney O'Donnell. In addition to those facts, the Court learned that one of those individuals, Mr. Lesiak, has a prior drug trafficking conviction and was represented within the last 14 months by Attorney Daher. The Court would also note that it does not shine the best light upon counsel that this prior representation was not disclosed at the time the Court and counsel first identified him as a payor. Instead, it appears that it was only disclosed following prompting by the Government's counsel.

From the Court's perspective, the above-information is sufficient to trigger the **duty** to inquire mandated by *Wood*. As the Court has tried to make clear, this is not a suggestion that

6

counsel has engaged in misconduct, nor is it a suggestion that they have not acted in their client's best interest. Instead, it is recognition that a reasonable person could review the facts contained in the record and perceive a potential conflict of interest.

Moreover, counsel is correct that it is conceivable that this matter could be resolved through Negrelli waiving any potential conflict. However, any such waiver must be knowing and voluntary. *See United States v. Reese*, 699 F.2d 803 (6th Cir. 1983). It is difficult to conceive of the potential conflict being knowingly waived if the record is silent as to the extent of the potential conflict. For example, Negrelli's own statements in this matter have indicated that he has not personally paid any of his four attorneys due to his incarceration. As one of those attorneys has received in excess of $50,000, it stands to reason that substantial other, unknown payments have been made by third parties to Attorney Peterson,[3] Attorney Daher, and Attorney Klugh. Without placing this information in the record, the Court cannot conclude that any waiver from Negrelli is knowing and voluntary.

Finally, the Court rejects any notion that the inquiry into the source of these payments is somehow improper. The Sixth Circuit has "long recognized the general rule that matters involving the payment of fees and the identity of clients are not generally privileged. There we also recognized, however, a limited and narrow exception to the general rule, one that obtains when the disclosure of the client's identity by his attorney would have supplied the last link in an existing chain of incriminating evidence likely to lead to the client's indictment." *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 453 (6th Cir. 1983) (citations omitted). Other exceptions have also been noted, such as when disclosure "would be tantamount to disclosing an otherwise protected confidential communication." *Id.* Herein, the Court finds no applicable

---

[3] Attorney Peterson has candidly admitted on the record to receiving payments from Negrelli's girlfriend, while the record is silent as to the source and amount of funds paid to Attorney Daher and Attorney Klugh.

exception that would warrant non-disclosure of the source and amount of funds paid to each of Negrelli's counsel.

Furthermore, the Court would note that defense counsel have indicated that Negrelli has given them all informed consent to accept payments from third parties.  As noted above, however, Negrelli was unable in open court to inform the Court of how much money had been paid to his counsel and by whom, so it is difficult to accept any assertion that he has given *informed* consent for these payments.

Finally, defense counsel places far too much emphasis on the fact that Negrelli retained them, not some third party, and that Negrelli is not an indigent defendant.  Counsel contends that these factors take this matter wholly outside the *Wood* conflict analysis.  However, nothing in *Wood* or its progeny suggests that either of those factors were material or that their absence would have led to a different result in the matter.  Instead, that line of cases stands for the proposition that when a potential conflict is brought to the Court's attention, the matter should be vetted prior to the acceptance of any waiver by a defendant.  Accordingly, the Court will endeavor to resolve the matter.

Within 14 days of this order, each of Negrelli's four counsel shall submit an affidavit attesting to the amount of fees received for their representation to date in this matter and identifying the source of the funds they have received.  These affidavits may be filed under seal with the Court and need not be disclosed to the Government at this time.  Following receipt of these affidavits, the Court will determine whether any additional on-the-record inquiry is necessary and whether the documents need to be disclosed to the Government.

IT IS SO ORDERED.

December 22, 2014                                /s/ John R. Adams
                                            JUDGE JOHN R. ADAMS
                                            UNITED STATES DISTRICT COURT